Case: 1:06-cv-05452 Document #: 62  Filed: 08/03/07 Page 1 of 15 PageID #:742



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| S.C. Rabin, individually and on behalf of herself and all others similarly situated<br><br>and<br><br>John Hollinger, individually and on behalf of himself and all others similarly situated<br><br>      Plaintiffs,<br><br>vs.<br><br>JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co.,<br><br>      Defendants. | No. 06 C 5452<br><br>Honorable William J. Hibbler |

### MEMORANDUM OPINION AND ORDER

Plaintiff S.C. Rabin ("Rabin") and John Hollinger ("Hollinger"), individually and on behalf of all others similarly situated, filed a five-count Amended Complaint against Defendants JPMorgan Chase Bank, N.A. ("Bank Trustee") and JPMorgan Chase & Co. ("JPM"), alleging various federal securities and state law claims. Before the Court are Defendants' motions to dismiss the Amended Complaint in its entirety, pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. For the reasons set forth below, Defendants' motions to dismiss the Amended Complaint are GRANTED.

1

## 1. Factual Background

The following summary of factual allegations is taken from Plaintiffs' Amended Complaint and is deemed true for purposes of this motion.[1] *See Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). Plaintiff Rabin is a beneficiary and Plaintiff Hollinger is a former beneficiary of a trust maintained by the Bank Trustee. The Bank Trustee, a federally chartered bank domiciled in New York, is a wholly-owned subsidiary of JPM. During the times relevant to this action, the Bank Trustee served as fiduciary for accounts that were to benefit Plaintiffs and Class Members.

According to Plaintiffs, on several occasions, the Bank Trustee purchased and sold shares of various JPMorgan Funds ("Fund") for Plaintiffs' trust accounts without informing Plaintiffs until the conclusion of the transaction. Further, Plaintiffs charge that the Bank Trustee unilaterally invested fiduciary account assets into its proprietary mutual fund - the Fund -- without regard to whether such investments were in the best interests of the beneficiaries. Plaintiffs further contend that as a result of these investment practices, Defendants generated undue profits by charging fees to the accounts of the beneficiaries at both the mutual fund and trust levels for managing the same assets. Accordingly, Plaintiffs argue that the Bank Trustee breached its fiduciary duty to the beneficiaries and engaged in self dealing transactions.

Plaintiffs maintain that in furtherance of its scheme, Defendants misrepresented and omitted material facts to the Securities Exchange Commission ("SEC") on Defendants' Registration Statements. Had the SEC known the relationship and ensuing control that Defendants exercised over the Fund and the Board of Trustees, the risks faced by the Fund's

---

[1] Plaintiffs' Amended Complaint contains over 112 lengthy paragraphs encompassing over 40 pages. The Court reminds Plaintiffs that pursuant to the Federal Rules of Civil Procedure, "each averment of a pleading shall be simple, concise, and direct." *See F.R.C.P. 8(e)(1)*.

investors, and the totality of fees and expenses borne by the Fund, Plaintiffs contend that the SEC would have prevented the Registration Statements from becoming effective and Defendants would have been unable to sell shares of the Fund. Plaintiffs bring Count I against both Defendants for violations of the Securities Exchange Act of 1933 ("Securities Act"). Plaintiffs bring Count II against both Defendants for violations of the Securities Exchange Act of 1934 ("Exchange Act"). Counts III and IV – brought solely against the Bank Trustee – allege that the Bank Trustee breached its fiduciary duty. In Count V, Plaintiffs allege a claim of unjust enrichment against Defendants. Plaintiffs seek class certification, asserting that there are a minimum of 5,000 class members dispersed throughout the United States and foreign countries. Plaintiffs also seek an accounting, injunctive relief, monetary damages, litigation costs and expenses, attorneys' fees, and such additional relief that the Court deems appropriate. Defendants move to dismiss the Complaint in its entirety pursuant to *Federal Rule of Civil Procedure 12(b)(6)*.[2]

## II. Standard of Review

Motions to dismiss under *Rule 12(b)(6)* test the sufficiency of the complaint rather than the merits of the case. *Midwest Gas Servs. v. Ind. Gas Co.*, 317 F.3d 703, 714 (7th Cir. 2003). In reviewing a motion to dismiss, a court construes all allegations in the complaint in the light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint

---

[2] Plaintiffs argue that Defendants in their motions to dismiss made factual assertions not contained in the Amended Complaint nor any document relied on by the Complaint. As a result, Plaintiffs urge the Court to convert Defendants' motions to dismiss to motions for summary judgment, pursuant to *Federal Rule of Civil Procedure 56*. A motion under *Rule 12(b)(6)* becomes a motion for summary judgment when matters outside of the pleadings are presented and "actually considered" by the Court. *Marques v. Fed. Reserve Bank of Chicago*, 286 F.3d 1014, 1017 (7th Cir. 2002). The Court did not consider or rely on any of the facts cited by Plaintiffs on pages 3 and 4 of their memorandum in opposition to the Bank Trustee's motion to dismiss. Rather, the Court relied solely on the Amended Complaint. Accordingly, the motions will not be converted to motions for summary judgment.

as true. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). The moving party bears the burden of showing beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). A complaint is not required to allege all or any of the facts logically entailed by the claim. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

### III. Analysis

#### A. Federal Securities Law Claims

Both Defendants advance several arguments in favor of dismissal of Plaintiffs' claims for violations of the Securities Act (Count I) and Plaintiffs' claims for violations of the Exchange Act (Count II).

1. Securities Act

Plaintiffs maintain that the issuance and filing of false and misleading Registration Statements by Defendants and their "controlled persons" was in violation of §§ 11, 12, and 15 of the Securities Act.

Section 11 of the Securities Act holds parties liable for damages sustained by those who purchased stock pursuant to a registration statement that "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). The statute provides that "any person acquiring such security" has a cause of action. 15 U.S.C. § 77k(a); *See also Ong v. Sears Roebuck & Co.*, 388 F.Supp.2d 871, 890 (N.D. Ill. 2004)(plaintiff must have purchased securities at issue to have standing to bring § 11 claim); *Central Laborers' Pension Fund v.*

*Sirva, Inc.*, No. 04 C 7644, 2006 U.S. Dist. LEXIS 73375, at *9 (N.D. Ill. September 22, 2006)(violators of § 11 are liable to those who purchased stock). Similarly, § 12 of the Securities Act imposes civil liability on any person who offers or sells a security "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact." U.S.C. § 77l(a)(2). A plaintiff has standing to bring suit under §12 if plaintiff is the person who purchased the security. *Id.; See Cathedral Trading, LLC v. Chicago Board of Options Exchange*, 199 F.Supp.2d 851, 858 (N.D. Ill. 2002). In addition, § 15 provides:

> every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more persons by or through stock ownership, agency, or otherwise, control any person liable under section 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable.

15 U.S.C. § 77o

Defendant JPM argues that Count 1 must be dismissed because there is no allegation that it registered or underwrote the underlying securities. Section 11 of the Securities Act imposes liability only upon the issuer of the security, directors of the issuer, anyone who signed the registration statement, underwriters of the issuer, and experts preparing or certifying a false part of the statement. *See* 15 U.S.C. § 77k(a)(1)-(a)(5). Further, Defendant JPM maintains that Plaintiffs' tenuous accusations that it "caused" the registrations to be filed and the mutual funds were issued "through" controlled persons are insufficient to sustain the allegation.

This Court finds that Plaintiffs lack standing to bring their asserted Securities Act claims. Plaintiffs' Amended Complaint explicitly sets forth that Plaintiffs were not purchasers of the securities at issue. (Am. Compl. at 7.) Further, the Complaint asserts that Plaintiffs were not

even made aware of the purchases until after they had occurred. *Id.* Section 11 of the Securities Act specifically provides a cause of action for "purchasers" or "those acquiring such security" against parties who play a direct role in a registered offering, for harm caused by material misstatements and omissions in the registration statement. 15 U.S. C. § 77k. Indeed, Rabin and Hollinger, as beneficiaries, were not involved to any extent with the purchase of the securities. Consequently, Plaintiffs lack the standing necessary to proceed with these claims.[3] Therefore, Count I of Plaintiffs' Amended Complaint is dismissed without prejudice.

2. Exchange Act

Plaintiffs maintain that Defendants' dissemination of false and misleading Registration Statements was in violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and *Rule 10b-5* of the SEC, collectively "10(b)."

Section 10(b) prohibits the use "in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). In accordance with this section, the SEC promulgated Rule 10b-5, which makes it unlawful for any person:

> (a) To employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

---

[3] Because the Court finds that Plaintiffs lack standing, Plaintiffs' claims under § 12, which imposes liability on persons who offer or sell securities and only grants standing to the person purchasing such security and Plaintiffs' "controlled person" claims brought pursuant to § 15 are moot.

"[A] court should be reluctant to imply a 10b-5 cause of action for wrongs that do not fall within § 10(b)'s fundamental purpose of requiring full and fair disclosure to participants in securities transactions of the information that would be useful to them in deciding whether to buy or sell securities." *O'Brien v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 593 F.2d 54, 60 (7th Cir. 1979)(citing *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477-78, 51 L. Ed. 2d 480, 97 S. Ct. 1292 (1977)). Section 10(b) and *Rule 10b-5* were enacted to provide a cause of action for plaintiffs suffering an injury as a result of misleading practices made in connection with the sale or purchase of securities. *Santa Fe Indus., Inc.*, 430 U.S. at 477-78. Defendants contend that Plaintiffs' claims are not covered by 10(b) because Defendants' alleged unlawful conduct was not done "in connection with" Plaintiffs' purchase of the securities. In particular, Defendants argue that Plaintiffs were not purchasers of shares of the Fund. Indeed, Plaintiffs concede that they were not purchasers of the securities at issue. (Am. Compl. at 7.)

The purpose of 10(b) is to create a remedy for a plaintiff induced by misrepresentations or omissions to buy or sell stock. *Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 534 (7th Cir. 1998)(upholding dismissal of securities fraud class action where plaintiffs made no investment decision to buy or sell stock but rather received the stock in connection with a spin-off); *O'Brien*, 593 F.2d at 60 ("the relevant inquiry is whether plaintiffs were denied information that would or might have been useful to them in deciding whether to purchase or sell securities which they actually did purchase or sell.") "This presupposes that someone had a choice, a choice distorted by the fraud;" that the plaintiff made an "investment decision." *Isquith*, 136 F.3d at 534.

7

In *O'Brien*, the Seventh Circuit held that 10(b) does not provide a remedy to an investor who completely lacked investment authority. *O'Brien*, 593 F.2d at 59. The trustee in *O'Brien* was vested with sole discretionary power to purchase and sell securities. *Id.* at 58. Because plaintiffs had no voice in the investment decision, the Court refused to recognize a cause of action under 10(b). *Id.* at 59. The Court stated,

> When the trustee or agent alone makes the investment decision to purchase or sell, his failure to disclose information about the purchase or sale to the beneficiary or agent does not satisfy the "in connection with" requirement of § 10(b). The enforcement of fiduciary and contractual duties owed by a trustee or agent to the beneficiary or principal is the concern of state law, not the federal securities laws.

*Id.* at 63.

As in *O'Brien*, Plaintiffs are suing the trustee for improper investment decisions. Under *O'Brien* and its progeny, a plaintiff's ability to state a claim against an agent or trustee under the securities law boils down to whether the investor actually made an investment decision. *See O'Brien*, 593 F.2d at 60; *Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co., Inc.*, 800 F.2d 177, 181 (7th Cir. 1986); *See also Kayne v. Paine Webber, Inc.*, 703 F. Supp. 1334, 1340 (N.D. Ill. 1989)("an investor who has delegated the entire authority to make investment decisions to his securities broker may not sue the broker under § 10(b) or Rule 10b-5 for misuse of his delegated powers"); *Capalbo v. Paine Webber*, 672 F. Supp. 1048, 1052 (N.D. Ill. 1987)(dismissing federal securities law claims because plaintiffs gave advisor complete investment discretion and thus, "the misrepresentations and omissions alleged could not relate to [the plaintiffs'] own decision to purchase or sell."); *Compare Norris v. Wirtz*, 719 F.2d 256 (7th Cir. 1983)(trust beneficiary had standing to sue trustee under § 10(b) because the trust document gave the beneficiary the authority to approve transactions and beneficiary did so). Because

Plaintiffs explicitly provide that they did not, at any time, make any investment decisions, they failed to satisfy this necessary requirement to bring a § 10(b) claim. Accordingly, Count II is dismissed.

Because this Court finds that Plaintiffs' lack standing to allege this claim, it does not determine the merits of whether Plaintiffs sufficiently met the heightened pleading requirements of the PLSRA for §10(b) or failed to plead loss causation. This Court notes that pursuant to the Supreme Court's recent ruling in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 168 L. Ed. 2d 179, 127 S.Ct. 2499 (2007), Plaintiffs are required to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." In order to qualify as "strong" within the meaning of the statute, an "inference of scienter must be more than simply plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 188.

### B. State Law Claims

Plaintiffs allege claims for breach of fiduciary duty (Counts III and IV) and unjust enrichment (Count V). Defendants contend that these claims should be dismissed as they are state law claims and, thus, preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

In enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress targeted "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 126 S. Ct. 1503, 1510, 64 L. Ed. 2d 179 (2006). However, "[r]ather than face the obstacles set in their path by the Reform Act, plaintiffs and their representatives began bringing class actions under state law . . ." *Id.* at

9

1511. Subsequently, the Securities Litigation Uniform Standards Act of 1998 was enacted in order to prevent plaintiffs from frustrating the objectives of the PSLRA by using private securities class action lawsuits alleging fraud. Pub. L. No. 105-353, 112 Stat. 3227 (1998) (codified at 15 U.S.C. §§ 77p(b)-(f) and 15 U.S.C. § 78bb(f). SLUSA provides that,

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security

15 U.S.C. § 77p(b).

Therefore, an action will dismissed as preempted by the SLUSA if the action is: (1) a "covered class action," (2) that is based on a state law, (3) alleging a misrepresentation or omission of a material fact or use of any manipulative or deceptive device or contrivance (4) "in connection with" the purchase or sale of a covered security. *Denton v. H&R Block Fin. Advisors, Inc.*, 2001 U.S. Dist. LEXIS 15831 (N.D. Ill. 2001). "A 'covered class action' is a lawsuit which damages are sought on behalf of more than 50 people." *Dabit*, 126 S. Ct. at 1512, *See* 15 U.S.C. § 78bb(f)(5)(B). "A 'covered security' is one traded nationally and listed on a regulated national exchange." *Dabit*, 126 S. Ct. at 1512, *See* 15 U.S.C. §§ 78bb(f)(5)(E), 77r(b). In order to determine preemption, the Court focuses on the "substance of the claim, not the Plaintiff's characterization of it." *Denton*, 2001 U.S. Dist. LEXIS 15831 * 7.

Plaintiffs argue that it pleads the state law claims of breach of fiduciary duty and unjust enrichment as an alternative to its federal securities claims. Further, while Plaintiffs do not dispute that the class action and securities at issue are "covered" within the meaning of the

10

SLUSA; the parties dispute whether Defendants' misrepresentations and omissions occurred "in connection with the purchase or sale" of securities.

### 1. Misrepresentations and Omissions

Plaintiffs maintain that their claims for breach of fiduciary duty and unjust enrichment are merely ancillary to and not predicated upon Defendants' material misrepresentations and omissions. For that reason, Plaintiffs argue, these claims are not preempted by SLUSA. "The fact that Plaintiffs have chosen to disguise what amount to claims of securities fraud as claims for . . . breach of fiduciary duty under state law is not enough to evade preclusion of those claims under SLUSA." *Potter v. Janus Inv.*, 483 F.Supp.2d 692, 702 (N.D. Ill 2007). In the case at bar, Plaintiffs assert state law claims of breach of fiduciary duty and unjust enrichment. Rather than focus on the labels that Plaintiffs assigned to the claims, the Court analyzes the substance of the allegations and finds that at the heart of the Amended Complaint is that Defendants misrepresented and omitted material facts related to the purchase of shares of the Fund for the accounts of the beneficiaries. In fact, the forty-four page Amended Complaint is rife with such claims of misrepresentations and omissions relating to the purchase of the mutual funds:

> Individually and/or collectively, the Bank, JPM and their "controlled persons" caused the Registration Statements to be filed with the SEC which contained, *inter alia*, JPMorgan Funds prospectuses, to be disseminated to members of the Federal Securities Sub-Class, which prospectuses omitted material facts . . . (Am. Compl. at 23.)

> . . . Had the SEC been informed that the foregoing Registration Statements omitted material facts required to be included therein and misrepresented material facts therein, it would not have allowed such Registration Statements to have become effective and, thus, the Bank, JPM and their controlled entities would not have been permitted to sell shares of the JPMorgan Funds to the Bank's fiduciary accounts and to the public generally. (Am. Compl. at 24.)

In *Siepel v. Bank of America, N.A.*, 239 F.R.D. 558 (E.D. Mo. 2006), current and former beneficiaries of trusts brought suit against a bank and an investment trust alleging various state law claims, including breach of fiduciary duty and unjust enrichment. *Id.* at 567. The beneficiaries alleged that the bank wrongfully transferred fiduciary account assets into proprietary mutual funds without considering other alternatives, failed to disclose the conflict of interest and the resulting fees, and misrepresented that the bank provided individualized account services. *Id.* at 561. The Court held that the "essence" of the complaint was that the defendants made misrepresentations and omissions of material facts regarding the transfer of fiduciary account assets to the proprietary mutual fund. *Id.* at 568. Consequently, the Court held that the state law claims were preempted by the SLUSA. *Id.* at 570; *See also Disher v. Citigroup Global Markets, Inc.*, No. 07-132-GPM, 2007 U.S. Dist. LEXIS 36972, at *22 (S.D. Ill. May 3, 2007) (claims for breach of fiduciary duty and unjust enrichment "clearly . . . precluded under SLUSA"); *Potter*, 483 F.Supp.2d at 700 ("no difficulty concluding" that breach of fiduciary duty claims preempted by SLUSA). While *Siepel* is not binding on this Court, its reasoning is consistent with the SLUSA's stated purpose, which is "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the 1995 Reform Act. SLUSA § 2(5), 112 Stat. 3227. Additionally, given the similarities between *Siepel* and the case at bar, the Court finds *Siepel* persuasive. Therefore, the attempt by Plaintiffs to characterize their allegations of misrepresentation and omission of material facts as claims for breach of fiduciary duty and unjust enrichment is futile.

2. "In Connection with the Purchase or Sale of a Covered Security"

Plaintiffs assert that because they lacked investment authority and were beneficiaries rather than purchasers or sellers, the "in connection with the purchase or sale of a covered security" requirement is not met. Plaintiffs rely on several cases – including *O'Brien*, 593 F.2d at 54 – where the Seventh Circuit found that the SLUSA preemption inapplicable because plaintiffs had "no voice" in the investment decisions.[4] *Id. at 60.* SLUSA does not define the "in connection with" language. In *Dabit*, however, the Supreme Court construed the language in the context of the SLUSA and held that courts should interpret the "in connection with" language to include purchasers and sellers as well as holders of covered securities, where the alleged fraud coincides with a securities transaction. *Dabit*, 126 S. Ct. at 1513. In *Dabit*, a former Merrill Lynch broker filed a putative class action suit on behalf of himself and other former and current brokers of Merrill Lynch who purchased certain securities for themselves and their clients. *Id.* at 1507. The securities broker – in bringing claims for breach of fiduciary duty and breach of contract – alleged that Merrill Lynch unlawfully manipulated stock prices which led him, other brokers, and their clients to continue to hold their stocks long after the time that they would have traded them had the true value been known. *Id.* Finding that the SLUSA preempted the state law claims, the district court dismissed the complaint. *Id.* at 1508. The Second Circuit disagreed and held that because the brokers were fraudulently induced to hold rather than sell the securities, the claims were beyond the SLUSA's preemptive scope. *Id.* The Supreme Court

---

[4] Plaintiffs' reliance on two pre-*Dabit* cases – *O'Brien* and *Norris v. Wirth*, 719 F.2d at 256 – is misplaced. The Court believes that *SEC v. Sandford* (a case cited in *Dabit* with approval) belies Plaintiffs' contention that, in the context of SLUSA, the plaintiff must have possessed investment authority in order that the "in connection with" language be satisfied. 535 U.S. 813, 122 S. Ct. 1899, 153 L. Ed. 2d 1 (2002). Despite the plaintiff's lack of investment authority in *Sandford*, the Supreme Court held that the "in connection with" language was fulfilled. *Id.* at 820-21.

13

reversed and explained that the identity of the plaintiff was irrelevant: "For purposes of SLUSA pre-emption . . . the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities." *Id.* at 1515. The Court indicated that the requisite showing involved "deception 'in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller." *Id.* at 1513. In the instant matter, Plaintiffs seek to avoid the SLUSA preemption by arguing that they were beneficiaries and therefore, did not purchase or sell shares of the Fund in response to the misrepresentations and omissions. However, in rejecting this same argument, *Dabit* focused on the conduct of the defendants rather than the identity of the plaintiffs. Plaintiffs contend that Defendants engaged in a scheme to invest proceeds from the beneficiaries' accounts into Defendants' proprietary mutual fund despite better suited options, through misrepresentations and omissions of material facts in Defendants' public filings and other disclosures. Despite the fact that they did not purchase, sell, or hold the shares, Plaintiffs have alleged fraud that occurred "in connection with the purchase or sale" of the Fund.[5] Accordingly, Counts III, IV, and V are dismissed as they are preempted by the SLUSA.

---

[5] The Court finds *Gavin v. AT&T Corp.*, 464 F.3d 634 (7th Cir. 2006), cited by Plaintiffs, to be inapposite to the facts of the case at bar. Further, in determining which issues were germane to whether the letter at issue in *Gavin* was fraudulent, the Seventh Circuit explained that the *Gavin* plaintiffs were trying to litigate a consumer fraud case against companies that had made no effort to influence the purchase or sale of a covered security, and not alleging a securities fraud case. The *Gavin* court also determined that "Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud." *Id.* at 640 (citing Marine Bank v. Weaver, 455 U.S. 551, 556, 102 S. Ct. 1220, 71 L. Ed. 2d 409 (1982)).

## IV. Conclusion

For the reasons articulated above, the Court GRANTS Defendants' motions to dismiss. Counts I and II are dismissed without prejudice. Plaintiffs may amend their complaint within 21 days from entry of this order in accordance with this Court's ruling, if they so choose. Counts III, IV, and V are dismissed as preempted by the SLUSA.

IT IS SO ORDERED.

8/3/07
Dated

The Honorable William J. Hibbler
United States District Court